UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

BUTTERMILK TOWNE CENTER, LLC    CASE NO. 10-21162

DEBTOR


L.A. FITNESS INTERNATIONAL, LLC    PLAINTIFF

v.    ADV. NO. 10-2032

BUTTERMILK TOWNE CENTER, LLC    DEFENDANT


**MEMORANDUM OPINION**

Section 510(a) of the Bankruptcy Code provides that contractual subordination agreements are enforceable post-petition in a debtor's bankruptcy case. 11 U.S.C. § 510(a). Plaintiff, L.A. Fitness International, LLC, seeks a declaratory judgment permitting it to offset its post-rejection rent obligations to the Debtor under a pre-petition subordination agreement. Because the subject agreement merely preserves any right of offset granted by a rejected lease, L.A. Fitness' right to offset its rent payments, if any, are governed by 11 U.S.C. § 365. Accordingly, judgment will be entered in favor of the Debtor.

I.

The Debtor is the owner and operator of Buttermilk Towne Center, a commercial real estate development in Crescent Springs, Kentucky (the "City"). On August 1, 2004, the Debtor entered into a Construction Financing Agreement with LaSalle Bank, now known as Bank of America (the "Bank"), to develop the Buttermilk Towne Center. To exempt the project from real estate taxes, the Debtor conveyed the real estate to the City, which issued bonds in the approximate amount of $34,000,000. The bonds are held by the Bank. The City used the bond proceeds to pay for the construction of the Center. The City leased the Center to the Debtor pursuant to a 25-year ground

lease. The City uses the rent paid by the Debtor to pay the interest/principal due on the Bonds.

L.A. Fitness is a California limited liability company operating fitness centers nationwide. On October 2, 2007, L.A. Fitness and the Debtor entered into a Retail Lease for space in the Center. Pursuant to a Work Letter incorporated into the lease, the Debtor was to provide funding in the amount of $4,275,000.00 to pay third party costs to improve the property for L.A. Fitness' use.[1] *Lease, Ex. C* ¶ 7. In the event the Debtor failed to provide the requisite funding, L.A. Fitness would be entitled to offset its rent obligations to the Debtor:

> If Landlord [Debtor] fails to pay any sum due to Tenant [L.A. Fitness] pursuant to the terms of this Work Letter and does not cure such default within thirty (30) days after written notice from Tenant specifying the default. . . . Tenant shall have the right to offset the amount due, together with interest . . . against the Minimum Rent and other charges due from Tenant to Landlord under the Lease until Tenant has received all sums due under the Lease and Work Letter.

*Lease, Ex. C* ¶ 9.1. The Work Letter further granted L.A. Fitness the right to assume control of the construction and to enter the site and perform all or any part of the construction work in the event it was not proceeding so as to be timely completed. If L.A. Fitness exercised this right:

> Landlord [Debtor] shall remain liable for payment of the costs associated with the Site Work. If Landlord fails to pay for the Site Work, then the amounts owed to Tenant [L.A. Fitness] shall bear interest at the Interest Rate from the date due until paid, and Tenant may offset such amounts against Minimum Rent and other sums first coming due under the Lease until Tenant has been fully reimbursed.

*Lease, Ex. C* ¶ 9.3.

More than a year after the lease was executed, on April 6, 2009, L.A. Fitness, the Debtor, the Bank and the City entered into a "Subordination, Non-Disturbance, and Attornment Agreement" which is the subject of this declaratory action. The agreement generally subordinated the lease to the Bank's mortgage and provided that the neither the Bank nor the City would disturb L.A. Fitness' rights under the lease notwithstanding any default by the Debtor. The subordination agreement expressly provided that nothing in the Agreement would limit, alter, affect, or impair L.A. Fitness' right to make deductions or offsets against rent "*as provided in the Lease.*" *Subordination*

---

[1] By a First Amendment to the Retail Lease, effective November 13, 2007, the construction allowance was increased to $4,357,365.00.

*Agreement*, ¶¶ 5, 7 (emphasis added).

The Debtor defaulted under the lease when it failed to provide funding to L.A. Fitness for the improvements and L.A. Fitness initiated a collection action in Kenton County Circuit Court. On August 17, 2009, the Debtor and L.A. Fitness entered into a Settlement Agreement which, in part, fixed the amount due from the Debtor to L.A. Fitness at $3,997,380.21 (the "Amount Owed"). The Agreement also provided that, beginning on August 17, 2009, L.A. Fitness was entitled to offset its rent obligations and any other amounts due to the Debtor under the lease, until the Amount Owed was paid in full. The Settlement Agreement was approved by the Kenton County Circuit Court.

The following year, on April 28, 2010, the Debtor filed its chapter 11 bankruptcy proceeding. Contemporaneously, the Debtor filed its motion to reject the unexpired L.A. Fitness lease pursuant to section 365(a) of the Bankruptcy Code. L.A. Fitness filed its limited objection stating its intention to remain on the premises pursuant to section 365(h)(1)(A)(ii).

L.A. Fitness has sought permission to offset its rent obligations under two separate procedural paths and legal theories. First, in the main bankruptcy case L.A. Fitness sought the court's permission to offset its post-rejection rent obligation pursuant to section 365(h)(1)(B). By order entered August 18, 2010, the court determined that the issue of whether L.A. Fitness' prepetition claim could be recouped or offset against its post-rejection lease obligations pursuant to section 365(h)(1)(B) was not ripe for decision until the plan–and the ultimate treatment of L.A. Fitness' claim in the plan–was before the court.

Second, L.A. Fitness commenced this adversary proceeding contending the terms of the subordination agreement should be enforced and seeking a declaratory judgment permitting it to offset its post-rejection rent obligations against its prepetition claim pursuant to section 510(a). The Debtor filed an answer which does not dispute any of L.A. Fitness' factual claims, but does dispute L.A. Fitness' legal conclusion that it is entitled to continue offsetting rents to satisfy its prepetition judgment. The Debtor's Motion for Judgment on the Pleadings is pending. At a status conference held on December 14, 2010, the parties stipulated that were no issues of disputed fact, that the matter had been fully briefed, and the issues could be resolved without a trial. Thus, the Court took the matter under submission.

II.

The court has jurisdiction herein pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(O).

III.

Section 510(a) of the Bankruptcy Code provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). When determining whether provisions within subordination agreements are enforceable, "[a] court must, as a first step, determine whether a purported agreement is a subordination agreement within the meaning of section 510(a). It looks to nonbankruptcy law to determine this issue." 4 COLLIER ON BANKRUPTCY ¶ 510.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.).

Kentucky Revised Statutes § 355.9-339 allows subordination by agreement by a person entitled to priority. KRS § 355.9-339 ("This article does not preclude subordination by agreement by a person entitled to priority."). Kentucky law does not, however, state what agreements may or may not be termed a "subordination agreement" or grant sufficient guidance on whether the arrangement captured in the subject agreement is common. Indeed, the Debtor questions whether the subordination agreement is the type of agreement to which section 510(a) applies.

Although a common type of subordination agreement may re-prioritize two or more creditors' lien rights or rights to collection/payment of a debt, agreements which subordinate a tenant's lease to a lender's mortgage are also deemed subordination agreements. *See generally In re Lantana Motel*, 124 B.R. 252, 255-56 (Bankr. S.D. Ohio 1990). Such an agreement is typically termed a "mortgagee-tenant subordination." *Id.* In mortgagee-tenant subordinations, "the mortgage lender insists that, as a condition to its lending money to the landlord, the tenant subordinate its lease to the lender's mortgage. In modern commercial mortgage lending, both lien subordination and mortgagee-tenant subordination are frequently seen as a part of the mortgage lender's effort to give its mortgage priority over all other property interests." *Id.*

The agreement at issue is a mortgagee-tenant subordination. Paragraph 1 of the agreement states: "Tenant's leasehold interest under the Lease is hereby made subordinate to any lien under the Instruments and to any renewals, extensions or modifications thereof, regardless of priority of recording, subject to the provisions of this Agreement." Notwithstanding that the agreement did not reprioritize the parties' respective lien or payment rights, it did subordinate the L.A. Fitness' lease to the Bank's mortgage; thus, the agreement comes within the scope of Section 510(a).

This conclusion, however, does not address the issue of whether the subject agreement creates an enforceable right for L.A. Fitness to offset its future rent payments to satisfy its pre-petition judgment. The Court find that it does not.

In support of its argument that the agreement entitles it to offset, L.A. Fitness cites to the following provisions:

> [T]he City and/or [Bank of America] will not disturb [L.A. Fitness's] interest and estate in the [Center] and will recognize all rights of [L.A. Fitness] under the Lease.
> . . .
> Bank of America covenants that so long as [L.A. Fitness] shall not be in material default under the Lease . . . (b) Bank of America will affirmatively recognize the validity of the Lease, all of the Lease terms, including renewal periods, and [L.A. Fitness's] interest and estate in the [Center] and [L.A. Fitness's] rights thereto and under the Lease . . . .
> . . .
> Nothing contained in this [Subordination] Agreement, however, shall be construed as limiting either [L.A. Fitness's] right to make deductions or offsets against rents as provided in the Lease or the amount thereof.

*Complaint for Declaratory Judgment*, ¶ 11-13.

The Debtor denies that L.A. Fitness is entitled to offset its obligations under these provisions, contending that cited sections of the agreement are taken out of context and relate to the terms and conditions under which the Bank will recognize the lease. Furthermore, the Debtor argues that the agreement merely provides that L.A. Fitness' rights under the lease will not be impaired by the Debtor's default or the Bank or City's exercise of their respective rights against the Debtor upon its default under the instruments.

5

The Court finds that the agreement does not create an enforceable right of offset; rather, the agreement merely acknowledges that any right of offset arising from the lease between the Debtor and L.A. Fitness is preserved. "In construing subordination agreements, [courts] are required to look at the intention of the parties and to ascertain how they meant the agreement to operate when they entered into it." *Thermoview Industries Inc. v. Clemmens*, No. 2003-CA-1-43-MR, 2004 WL 2260289, at *1 (Ky. App. Oct. 8, 2004) (citing *Ranier v. Mount Sterling National Bank, Ky.*, 812 S.W.2d 154, 156 (Ky. 1991)). The subordination agreement itself expressly sets forth the intent of the parties, stating its purpose as follows:

> WHEREAS, this Agreement sets forth the terms and conditions under which: (a) the Lease will be subordinate to any lien under the Mortgage, Statutory Mortgage, Ground Lease, Assignment, Trust Indenture, Bond Purchase Agreement, and Construction Financing Agreement (collectively, the "Instruments"); (b) the City and/or LaSalle Bank will not disturb [L.A. Fitness's] interest and estate in the Demised Premises and will recognize all rights of [L.A. Fitness] under the Lease notwithstanding default by [the Debtor] under any of the Instruments, foreclosure under any of the Instruments, or any other exercise of the rights and remedies of the City and/or LaSalle Bank under any of the Instruments, and (c) Tenant will attorn to and recognize as Landlord the City and/or LaSalle Bank or such subsequent assignee of the City and/or LaSalle Bank's rights in the Demised Premises.

Accordingly, the subordination agreement: (1) subordinated L.A. Fitness' lease interest to the Bank's mortgage; (2) protected L.A. Fitness from disturbance and preserved its rights under the lease; and (3) required L.A. Fitness to recognize the City and/or the Bank as landlord. The portions of the agreement which address the offsetting of rents do nothing more than point back to and preserve L.A. Fitness' rights under the lease. They do not create a right for L.A. Fitness to offset rents under to satisfy a judgment.

IV.

The subordination agreement does not create an independent enforceable right of offset which can negate the applicability of Section 365 in the context of a rejected lease. Accordingly, L.A. Fitness may not offset its rent obligations to the Debtor under Section 510(a). Any right of offset/recoupment is governed by the rejected lease and subject to the provisions of Section 365 in the Debtor's underlying bankruptcy proceeding. The foregoing constitutes the Court's

findings of fact and conclusions of law. A separate order will be entered in accordance with the foregoing.

Copies to:

Jeffrey R. Teeters, Esq.
Timothy J. Hurley, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Thursday, December 30, 2010**
**(tnw)**